# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **JOE HAND PRODUCTIONS, INC.,** | |
| Plaintiff, | |
| v. | Case No. 11 C 4307 |
| **MYRON LEGG,** Individually and as an Officer, Director, Shareholder, and/or Principal of **HOME STRETCH INN, INC.,** d/b/a **HOME STRETCH INN** and **HOME STRETCH INN, INC.,** d/b/a **HOME STRETCH INN,** | Hon. Harry D. Leinenweber |
| Defendants. | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment. For the reasons stated herein, Plaintiff's Motion is granted in part and denied in part and Defendants' Motion is denied.

### I. BACKGROUND

Unless otherwise indicated, the following facts are from the parties' Local Rule 56.1 Undisputed Statements of Material Fact.

Plaintiff Joe Hand Promotions, Inc. is a Pennsylvania corporation with the exclusive right to distribute to commercial businesses, via closed circuit television, certain mixed martial arts competitions. (Other entities, such as Dish Network, enjoy

the right to distribute such fights to residential customers.) Included in Plaintiff's contract rights was the right to distribute a fight on August 28, 2010 known as the "Edgar v. Penn 2 Broadcast" ("The Event").

Defendant Myron Legg ("Legg") is the sole shareholder of Defendant Home Stretch Inn, Inc., ("The Inn") located in River Grove, Illinois. He admits to showing the fight in The Inn on August 28, 2010.

Legg contends he lives in an apartment above The Inn and that Dish Network knowingly installed the satellite television service in both the residential and commercial areas of his building, on one residential account, and told him this was perfectly permissible. However, aside from citing to a copy of a Dish Network bill showing Legg paid the residential pay-per-view fee of $44.99 for the fight, Legg provides no citation to the record for these contentions, and Plaintiff asks that they be stricken from the record.

Plaintiff contends it is impossible that Defendants accidentally violated 47 U.S.C. § 605(a), and insists it was a willful violation on Defendants' part. As proof, Plaintiff points to Dish Network's Customer Agreement that states that customers agree not to show any of Dish Network's services in any areas open to the public or in commercial establishments. However, Plaintiff

did not produce any evidence that Defendants signed or even were presented with such an agreement.

After The Event, Plaintiff sent The Inn a letter on October 1, 2010 informing the business it was in violation of 47 U.S.C. § 605 and asking it to enter into settlement negotiations. The Inn, in interrogatories that Plaintiff references, admits that besides The Event, The Inn also showed seven other mixed martial arts fights for which Plaintiff had exclusive licensing authority. Plaintiff argues that because three of these fights occurred after the October 1, 2010 letter, Defendants' violation was necessarily willful. However, none of the evidence Plaintiff cites establishes specific dates for these seven other fights. *See Pl.'s Memo*, Ex. B(1), ¶¶ 36-43, ECF No. 23-5, PageIDs 112-113.

Plaintiff originally brought three Counts of action: (1) Violation of 47 U.S.C. § 605 or in the alternative (2) Violation of 47 U.S.C. § 553, and (3) Illinois common law conversion. Section 605 applies to satellite transmissions while § 553 applies to cable transmissions. Having determined this case involves satellite television, Plaintiff has dropped Count II.

## II. **LEGAL STANDARD**

The Court applies the ordinary summary judgment standard. *See, e.g.,* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III. <u>ANALYSIS</u>

### A. Liability under 47 U.S.C. § 605

As a preliminary matter, the Court notes that it believes Plaintiff has also dropped Count III, its conversion claim, based on its representation that "After the benefit of discovery, Plaintiff moves solely under Title 47 U.S.C. § 605." The Court takes this as an implicit voluntary dismissal of the conversion count. In the alternative, Defendants argue conversion cannot lie in regards to intangible property, and Plaintiff does not respond to this argument. Arguments not responded to are waived, and if Plaintiff has not dropped this count, the Court grants summary judgment in favor or Defendants on Count III. Therefore, only Count I remains.

Title 47, Section 605(a) provides:

> [N]o person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney,
>
> . . .
>
> No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

The case law makes clear this is a strict liability provision. *See KingVision Pay Per View, Ltd. v. Myths, Inc.*, No. 04-351, 2001 U.S. Dist. LEXIS 2272, *4-5 (N.D. Ill. Mar. 2, 2001) (noting intent goes to damages, not liability); *see also Joe Hand Promotions, Inc. v. That Place, LLC*, No. 11-931, 2012 U.S. Dist. LEXIS 90536, at *8-9 (E.D. Wis. Jun. 29, 2012).

Both Defendants have admitted to showing the August 28, 2010 fight in the bar while patrons were present, buying drinks and food. This is enough to find liability, if not for "interception," then for divulgence or use of communications which have been received legally. *See That Place*, at *8-10 (imposing liability where bar owner who lived above bar had paid one residential rate for service in both residential and commercial areas and then displayed the fight to his patrons in the bar).

**B. Damages**

Plaintiff may elect to seek either actual damages under § 605(e)(3)(C)(I) or statutory damages of $1,000 to $10,000 under § 605(e)(3)(C)(II) for each violation of the act. Plaintiff has elected the latter. Where "the violation was committed willfully *and* for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages, whether actual or statutory, by an amount of not more than $100,000 for each violation. . . ." 47 U.S.C. § 605(e)(3)(C)(II)(ii) (emphasis added).

The Court has little doubt the fight was broadcast for purposes of commercial advantage, but Plaintiff has not established that the violation was willful.  Plaintiff asks that Defendant Legg's representations regarding his beliefs as to the appropriateness of paying the residential rate and what Dish Network told him be struck.  The Court agrees that Defendants did not conform to Rule 56.1 because they failed to cite to the record for most of these representations.  However, Defendants did properly cite to the Dish Network bill showing that the residential rate was paid for the fight.  Absent evidence that Legg rewired or split his own residential account, this bill creates a plausible inference that could allow a jury to find that Dish Network wired both the residence and the bar and that Legg reasonably believed he was properly paying for the commercial use.

Plaintiff argues courts automatically find willfulness in commercial settings, but *That Place* refutes this contention.  *That Place*, 2012 U.S. Dist. LEXIS 90536, at *11-12 (finding lack of willful violation where Defendant bar owner was paying residential, rather than commercial rate).

Plaintiff also asserts that Defendants' display of three fights after the cease-and-desist letter proves willfulness.  This argument fails for two reasons.  First, as the Court previously noted, Plaintiff failed to cite any evidence establishing the dates those fights were shown at The Inn.

Second, what the Plaintiff is actually seeking is willful damages for the showing of *those three fights*, not for the August 28, 2010 fight. Plaintiff's Complaint dealt strictly with the August 28, 2010 fight and did not allege any additional violations or greater scope. The Court declines to amend Plaintiff's complaint for it, particularly after Plaintiff has already moved for summary judgment and Defendants have not had an opportunity to reply to these allegations regarding the three additional fights. *See Golodner v. City of New London*, 2010 U.S. Dist LEXIS 91927, 25-26 (D. Conn. Aug. 31, 2010) (ruling Plaintiff could not amend his claim through a response to summary judgment); *see also Zachair Ltd. v. Driggs*, 965 F.Supp. 741, 745 n.4 (D. Md. 1997) (noting that a plaintiff is bound by the allegations contained in its complaint and could not, through the use of motion briefs, amend it).

Plaintiff is entitled to proceed to trial to try to prove willfulness. Alternatively, the Court is prepared to award $2,000 ($1,000 assessed against each defendant) in damages in addition to the costs, attorney's fees and injunction awarded *supra*. This $2,000 represents more than double the amount ($900) Plaintiff would have received had Defendants properly contracted for the August 28, 2010 fight, and the Court believes the doubling will act as a deterrent to this and other potential violators of the act.

But because willfulness has not been proven, the Court must deny Plaintiff's summary judgment request for damages of $25,000.

### C. Attorney's Fees and Costs

Section 605(e)(3)(iii) provides for mandatory costs including reasonable Attorney's Fees. The Court believes it has no discretion in this matter. *See That Place*, at *13-14. Accordingly, Plaintiff is directed to present a petition for fees and costs at the conclusion of this litigation so that the Court may assess them for reasonableness and award an appropriate amount.

### D. Injunctive Relief

Defendants are enjoined from displaying at The Inn any entertainment whose distribution is exclusively licensed to Joe Hand Promotions, Inc. unless they properly contract for it.

### IV. CONCLUSION

For the reasons stated herein, Plaintiff's Motion for Summary Judgment as to liability on Count I, for attorney's fees and for injunctive relief is granted. Plaintiff's Motion as to a finding of willfulness on Defendants' part is denied. Plaintiff may proceed to trial or accept the relief as detailed above. Defendants' Motion for Summary Judgment is denied.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:** 9/5/2012